Mr. Barney Good morning, your honors. May it please the court. My name is Ian Barney, along with Damon Sharonis, on behalf of the appellant, Charles Tankson. Your honors, this is an appeal from criminal case in which Mr. Tankson was sentenced to 19 years imprisonment after a plea of guilty to heroin distribution. Two issues raised on appeal both relate to relevant conduct finding in the district court, and specifically the district court's drug quantity finding. Here, Mr. Tankson pled guilty to distributing between 300 and 400 grams of heroin. However, at sentencing, the district court found Mr. Tankson responsible for between 30 and 40 kilograms of heroin. The increase in drug quantity was 100-fold, and more than tripled his guideline range from 110 to 137 months imprisonment, to 360 months to life imprisonment. And the determination was based solely on Mr. Tankson's post-arrest statement. This was not a handwritten statement, and it was not a recorded, audio-recorded or video-recorded statement. It was an oral statement given by Mr. Tankson and memorialized by law enforcement in an FBI 302 report. Obviously, as this court well knows, relevant conduct findings are fact-intensive inquiries, and Mr. Tankson recognizes that district courts are given, and necessarily given, wide latitude in determining what evidence is reliable at sentencing hearings. Nevertheless, district courts must only consider that evidence that is sufficiently reliable to support its probable accuracy, and that's because defendants have an absolute due process right to be sentenced on accurate information. Here, the statement given by Mr. Tankson post-arrest was neither reliable nor accurate. This court was faced with a somewhat different situation, but a somewhat similar situation in United States v. Robinson, where it wasn't a defendant's statement on an issue, but it was an associate of the defendant who gave a statement that attributed a significantly more amount of drugs to the defendant. Here, in Robinson, the court stated, essentially, that the statement was nonsensical, and because it didn't make sense, that the court wasn't going to credit it, and it perverts district court's finding on that point. Why wasn't the statement reliable in that case? Well, in essence, the associate's statement was that as the defendant sold drugs in larger quantity, the price per ounce essentially increased, which was kind of contrary to this court's experience in common sense. Similarly, in fact, in Robinson, this court was particularly concerned because the statement accounted for 97% of the drugs attributed to the defendant. Here, similarly, Mr. Tankson's post-arrest statement accounts for 99% of the drugs attributed to him in this case. He pled guilty to distributing between 300 and 400 grams. District court found him responsible for between 30 and 40 kilograms of heroin. Right. What's unreasonable or unreliable about his confession? Judge, I would like to, Your Honor, I would like to address just a couple of those. I would like to highlight a few of those for the court, a few points in his statement. First, he says he meets this supplier. He tells the FBI he meets an original supplier at an auto shop. This person, whose name he doesn't know, whose nickname he doesn't know, then introduces him to who I'll call supplier two at the same auto body shop. Well, he can't point out the shop on a map to the FBI. He doesn't know the name of the auto shop. We're talking about the drug quantity, though. That's the focus here, right? Correct, Your Honor. What's unreliable or unreasonable or implausible about the drug quantity estimate that he gave? Well, first, I think his estimate with regard to the drug quantity needs to be looked at in the context of the entire statement. I think the entire statement is unreliable. I think it's boasting and puffery in an effort to make himself look more valuable to law enforcement than he is. He makes these statements in the context of attempting to cooperate. He's pointing out pictures. He's giving out information about individuals. Now, specifically with regard to the amount, he says, he tells the FBI, I made approximately 100 orders of heroin from my supplier, 300 to 400 grams apiece. Well, if you look at the facts of this case, you have the defendant selling heroin, you have Mr. Tankson selling heroin undisputed to Walter Blackman, this other individual who's a customer. Well, he never sells Walter Blackman 300 or 400 grams at a time. He sells them, Walter Blackman makes an order for 50 grams, makes an order for 100 grams, makes another order for 100 grams. So you don't even have that type of quantity specifically in the charged conduct. These are purchases from somebody else, the amounts you're challenging. Mr. Tankson's purchases? Right. Correct. I thought that's what we're talking about here. That's correct, Your Honor. But Mr. Tankson's statement, in his statement, he tells law enforcement, I only order from my supplier when I have an order from a buyer. So according to his statement, he gets an order from a buyer. Once he gets that order, he goes to his supplier and he puts an order in for heroin in this instance, and then he delivers, they rendezvous, and he delivers to his customer. Here, you don't have 300 to 400 gram purchases by Mr. Blackman. You have first one order of 50 grams, then he doubles it to 100, and then there's another order for 100 grams. So the facts of his statement don't jive with reality. In addition, if Mr. Tankson is making these large-scale purchases, during the time he's under investigation, there's no corroboration. There's no other customers of Mr. Tankson that are identified. He's under surveillance and has a GPS tracker on one of his vehicles. There's no information that he goes to Fort City Mall after Walter Blackman sets up these deals, as he says he would have in his statement. There are no call records that show that after Walter Blackman contacts him, he's contacting an individual with a Mexican phone number with a Mexican country code and actually says it's a Mexican phone number. And again, he doesn't even know the country code when the FBI agent's asking, okay, well, what's the country code of the phone number that you're calling? In addition, the phone number of Mr. Tankson and of his supposed supplier. So what should a judge do in a case where someone confesses and he's not insane or anything, but the circumstances suggest that he's exaggerating? Your Honor, it's a difficult position for sure for a district court to be in. I think in an instance like this, the district court cannot credit that statement. There's nothing else outside of Mr. Tankson's statement that supports that he purchased 300 to 400 grams of heroin 100 times over the course of two years. There's no information. But more importantly than that, the information that the district court did have, in my opinion, contradicted what his statement said. It makes his statement implausible. This court has said where it's faced with implausible or patently unreliable statements, it will not credit that, even when review is clear error. It made that clear in United States v. Robinson. I think this is an instance where we have a statement that is patently unreliable. The district court cannot categorically credit . . . What's the judge supposed to do? Your Honor, I think Mr. . . . You can't force the defendant to testify further. That is true, Your Honor. In this case, at the district court level, witness testimony was heard and the issue was briefed. I think the district court has to look at the context of the statement, has to look at the information that is before it. In this instance, the district court should have not credited the statement and should have sentenced Mr. Tankson on the charged conduct, which obviously he acknowledged, but because there was no other evidence that substantiated the information in his statement, the district court should not have credited him. But it would be equally . . . Even if there are the defects you pointed out, it would be absurd to infer from this that he hadn't made any of these drug sales. I agree with you, Your Honor. I think it would be . . . So what's the judge supposed to do? Say, oh, we'll call this 100 grams or something. I don't think the court can do that because it would just be guesstimating, essentially. I think the information has to be reliable that the district court is using. If the information is not reliable, it cannot use it. And again, a defendant's statement cannot be categorically reliable because the defendant can say anything after they're arrested. If Mr. Tankson said, I sold 2 kilograms to John F. Kennedy, well, the court wouldn't credit that just because he said it because the court would know that it's not reliable. I've never heard of confession being thrown out without some indication that the defendant was coerced or was mentally ill. It's assumed people don't confess to things they haven't done. Your Honor, I see my time has expired, if I may answer your question. I think it is true people confess to things that they have not done. I think there's a myriad of reasons why that is the case. In this instance, Mr. Tankson is not asking, you know, if this case would have gone to trial, the statement would have certainly been used against him, I'm sure. He's not asking for it to be suppressed. He's merely asking this court to look at the statement and determine that it's not reliable. It's not a reliable statement, and therefore the district court should not have credited it. That's the same as suppression? You're asking us to throw it out? Well, Your Honor, in one sense, I am. For purposes of sentencing... In the only meaningful sense, you're asking us to disregard it. I am asking this court to disregard it. Thank you. Okay, well, thank you, Mr. Barney. Thank you. Ms. Bell? May it please the court, Carol Bell on behalf of the United States. The district court here did not clearly err in its drug quantity finding. Its drug quantity finding was based on a detailed statement defendant, not a third party like in Robinson, voluntarily made after his arrest under circumstances where there wasn't any indicia of coercion or other issues that would elicit a false admission. And this statement was supported by evidence surrounding the counts of conviction, and the reliability of this statement was thoroughly and carefully considered by the district court. The district court took the detailed description the defendant gave of his supplier and his methods of operation, as well as looking at the statement regarding the defendant saying, over about a hundred-month period, I made about a hundred purchases of 300 to 400 grams of heroin. And the district court took that statement and compared it to what was known based on the counts of conviction where the defendant was seen over a five-week period distributing on four separate occasions approximately 100 to 150 grams of heroin to one customer, Walter Blackman. And so the court did find corroboration and support based on the facts of the case and the defendant's admission. Now, defense counsel has said, you know, these drug quantities don't match up, but he's comparing apples to oranges from the standpoint that Mr. Tankston is buying from a supplier 300 to 400 grams, not storing it and distributing it, but one would assume, like most drug traffickers, he would have multiple customers. So the fact that Walter Blackman is making purchases of 100 or 150 grams does not make it implausible that he, Mr. Tankston, could have been purchasing 300 or 400 grams at a time. Further, there's been a suggestion now that wasn't made below that Mr. Tankston was just, you know, bolstering and puffing up to look important to FBI during this statement. There's nothing regarding the circumstances surrounding that statement where there was any discussion of Mr. Tankston trying to get out to do proactive cooperation or something else that would be a circumstance that might give a defendant incentive to puff up or bolster his importance in the eyes of FBI. Rather, what we have here is a defendant who was confronted by damning evidence of his guilt by skilled FBI agents who's admitted his wrongdoing, and if anything in those circumstances, what we would expect to see is the defendant minimizing, not exaggerating his ability at moving heroin. The second issue that the defense has raised is the district court's inclusion of this drug weight as relevant conduct. The district court carefully considered, again, the inclusion of that additional 30 to 40 kilograms of heroin as relevant conduct, and found that it was both part of a common scheme or plan or part of the same course of conduct, and its reasoning, again, was sound. As for the third issue raised by the defendant, which is the district court's application of the career offender guideline, that application was proper for the same reasons that its application, that its analysis of relevant conduct was proper. So if the court has no further questions, I respectfully ask that it affirm the defendant's sentence. Okay, thank you, Ms. Bell. Thank you, Your Honor. Mr. Barney, your time has expired, but if you have anything further, you can give an amenity to him. Just one brief point, and that is the government pointed out that Mr. Blackman was only one customer of Mr. Tankson's and that there could have been other customers accounting for the 300 to 400 grams of heroin per purchase order, but if you look at Mr. Tankson's statement, he specifically apparently tells the FBI, I only purchase as much as is needed on any given day, and he only makes a purchase when he has a customer. So I think the statement that he's distributing this 300 to 400 grams to other customers in addition to Mr. Blackman, I don't know if the statement supports that. Other than that, unless the court has any other questions. Thank you. Okay, well, thank you very much, Mr. Barney.